**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
_____

Betty Vargo-Schaper, individually
and as Trustee for the Heirs of
Mitchell E. Schaper, deceased,

    Plaintiff,

                                                                 Civ. No. 08-310 (RHK/AJB)
                                                                 **MEMORANDUM OPINION**
                                                                   **AND ORDER**

v.

Weyerhaeuser Company,

    Defendant and Third-Party Plaintiff,

v.

Fil-Mor Express, Inc.,

    Third-Party Defendant.
_____

Kenneth N. Potts, Kenneth N. Potts, PA, Minnetonka, Minnesota, for Plaintiff.

Matthew D. Sloneker, Lind Jensen Sullivan & Peterson, Minneapolis, Minnesota, for Defendant/Third Party Plaintiff.

Scott P. Drawe, Drawe & Maland, Edina, Minnesota, for Third Party Defendant.
_____

## INTRODUCTION

       Plaintiff Betty Vargo-Schaper, individually and as the Trustee for the Heirs of Mitchell Schaper, brought this action against Defendant Weyerhaeuser Company ("Weyerhaeuser"), alleging that it acted "improperly, negligently and without due care" in the loading of cardboard-box bundles onto Schaper's commercial truck. Specifically,

Vargo-Schaper asserts that because of this negligent loading, a bundle fell from Schaper's trailer, striking him in the head and killing him. Weyerhaeuser now moves for summary judgment. For the reasons set forth below, the Court will grant the Motion.

**BACKGROUND**

**I.     Schaper's accident**

Weyerhaeuser is a manufacturer of cardboard boxes. (Ryan Steen Dep. Tr. at 7.) At the time of his death, Schaper was a truck driver for Third Party Defendant Fil-Mor Express, Inc. ("Fil-Mor"), a commercial carrier. (Compl. ¶¶ III-IV.) Fil-Mor, as a commercial carrier, provided services to Weyerhaeuser by transporting its cardboard boxes by truck. (Robert Dolfay Dep. Tr. at 45.)

On February 22, 2007, Schaper arrived at a Weyerhaeuser facility in White Bear Lake, Minnesota to pick up a load of cardboard-box bundles.[1] (Id. at 6; Compl. ¶¶ IV-V.) Schaper then transported the bundles to a warehouse facility known as "All-Temp." (Todd Strandmark Dep. Tr. at 5-6.) While there, Schaper suffered a severe head injury, causing his death. (Compl. ¶ VII.)

Although there were no witnesses to Schaper's accident, circumstantial evidence indicates that Schaper was struck by a falling bundle when he opened his trailer doors at All-Temp.[2] Generally, when drivers arrive at All-Temp, they open their trailer doors for unloading. (Strandmark Dep. Tr. at 15-16.) On the day of Schaper's accident, an All-

---

[1] A cardboard-box bundle is a large square unit consisting of flattened cardboard boxes banded together for transportation purposes. (Dolfay Dep. Tr. at 24-26.)

[2] Weyerhaeuser does not dispute that circumstantial evidence supports this contention. (Reply Mem. at 5-6.)

2

Temp employee, Todd Strandmark, noticed Schaper's truck parked at the loading dock with its trailer doors open. (Id. at 12-17.) On the ground, three or four feet away from the open doors, was a bundle. (Id. at 14.) Upon closer inspection, Strandmark observed that the bundles in the trailer were placed in two rows stacked two bundles high. (Id. at 16-18.) However, a top bundle on the left side of the trailer was missing, appearing to be the bundle lying on the ground. (Id. at 17.) According to Strandmark, the bundles remaining in the trailer were "tight and uniform." (Id. at 32.)

Initially, Strandmark believed Schaper to be on his way to report the fallen bundle to All-Temp personnel. (Id. at 22-23.) However, when Schaper could not be located, Strandmark peered inside the cab of Schaper's truck and found him lying unconscious. (Id. at 23.) Based on his observations, Strandmark believes Schaper was opening the left door of his trailer when he was struck by a falling bundle. (Id. at 10, 26.)[3]

## II.  Loading procedures at Weyerhaeuser

Generally, bundles are loaded onto trailers at the Weyerhaeuser facility by Weyerhaeuser employees who determine how to best load the trailers. (Dolfay Dep. Tr. at 7, 21-22.) Bundles are normally placed in two rows stacked two bundles high. (Id. at 38.) While bundles are sometimes placed on pallets, they are not secured to them. (Id. at 11-12.) To maximize space in the trailer, bundles are often loaded from the end of the trailer up to the trailer doors. (Id. at 40.)

---

[3] There is no evidence in the record as to how Schaper was able to move himself into the cab of his truck after sustaining his injuries.

3

After bundles are loaded onto a trailer, "spotters" employed by Fil-Mor pull the trailers away from the loading dock and inspect the load. (Richard Thompson Dep. Tr. at 11.) After this inspection, the spotter closes the trailer and places a plastic seal on its doors. (Id. at 11; Scott Ronken Dep. Tr. at 16.) The testimony of Fil-Mor employees is conflicting as to whether Fil-Mor drivers also inspect the stability of their loads prior to leaving the Weyerhaeuser facility. (Thompson Dep. Tr. at 14; Klein Dep. Tr. at 12; Ronken Dep. Tr. at 14.) In this case, there is no evidence as to whether Schaper inspected his load prior to driving to All-Temp, nor is there any evidence as to how the bundles were loaded onto Schaper's trailer.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a

genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**ANALYSIS**

Weyerhaeuser asserts that summary judgment is appropriate because, as a matter of law, Vargo-Schaper cannot establish negligence. Because this is a diversity action, the Court will apply Minnesota law to resolve the issue. Gylten v. Swalboski, 246 F.3d 1139, 1141 (8th Cir. 2001).[4]

"In Minnesota, to prevail on a claim for negligence, a plaintiff must prove the following: (1) that the defendant has a legal duty to the plaintiff to take some action; (2) that there was a breach of that duty; (3) that the breach of that duty was the proximate cause of the harm to the plaintiff; and (4) damage." Id. (citing Gilbertson v. Leininger, 599 N.W.2d 127, 130 (Minn. 1999)). While Weyerhaeuser owed a duty to Schaper to guard against latent loading defects, the Court finds that Vargo-Schaper cannot establish a breach of this duty. Accordingly, the Court will grant summary judgment in favor of Weyerhaeuser.

**I.    Duty**

Motor carriers, such as Fil-Mor, are subject to the Federal Motor Carrier Safety Regulations. 49 C.F.R. § 390.5. These regulations place the duty upon the carrier to ensure load security. 49 C.F.R. §§ 390-393. Therefore, "[t]he primary duty as to the safe loading of property is . . . upon the carrier." United States v. Savage Truck Line, Inc., 209 F.2d 442, 445 (4th Cir. 1953). In fact, "responsibility for improper loading generally

---

[4] The parties do not dispute that Minnesota law is the applicable law in this case.

rests with the carrier, even if the shipper loads the cargo." Smith v. N. Dewatering, Inc., Civ. No. 01-1948, 2004 WL 326696, at *2 (D. Minn. Feb. 19, 2004) (Ericksen, J.). However:

> When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.

Savage, 209 F.2d at 445.

Both parties agree that as a shipper, Weyerhaeuser owed a common-law duty of care to Schaper to prevent latent loading defects. (Mem. in Supp. at 10; Mem. in Opp'n at 9.) Vargo-Schaper does not argue that Weyerhaeuser had the duty to prevent or correct open and obvious loading defects. Accordingly, Vargo-Schaper must present evidence of a latent loading defect to avoid summary judgment.[5]

## II. Breach

Weyerhaeuser argues that there is no evidence of a latent loading defect, and therefore, a breach of duty cannot be established as a matter of law. (Mem. in Supp. at 10.) For a defect to be latent, it must "not [be] discernable from ordinary observation." Smith, 2004 WL 326696, at *3. In this case, Vargo-Schaper asserts that two latent defects were present in Schaper's load: first, she argues that the bundles were

---

[5] Scott Ronken, a former Fil-Mor driver, testified that he was ordered not to inspect his trailers loaded by Weyerhaeuser employees if the trailer doors were shut and sealed prior to his arrival at the Weyerhaeuser facility. (Ronken Dep. Tr. at 14-15.) This order, however, did not come from Weyerhaeuser, but from Fil-Mor dispatch. (Id.) Moreover, trailer doors were not sealed by Weyerhaeuser employees, but instead were sealed by Fil-Mor spotters or drivers. (Thompson Dep. Tr. at 11.) Therefore, Fil-Mor, as the carrier, had the ability to inspect loads prior to transporting them.

6

"crowned;" and second, she argues that the heaviest bundles in the trailer were wrongfully loaded next to the trailer doors. (Mem. in Opp'n at 10-12.)[6]

Vargo-Schaper is correct that Weyerhaeuser bundles would occasionally become "crowned" as a result of the banding used to hold the bundles together. (Steen Dep. Tr. at 19.) The banding would compress the outer edges of the bundles more than the middle of the bundles, creating a "crown" and making the bundles less stable when stacked. (Id. at 19-21.) As a result, crowned bundles were more likely to fall off a trailer when the trailer doors were opened. (Id. at 23.)

In this case, while the crowning of bundles has been demonstrated to create a stability concern, Vargo-Schaper has not directed the Court to any evidence indicating that the bundles in Schaper's trailer were in fact crowned. Moreover, Vargo-Shaper has put forth no evidence indicating that crowning is a <u>latent</u> defect that cannot be discerned through ordinary observation. Indeed, it appears from the record that the absence or presence of crowning is observable. (Steen Dep. Tr. at 43; Strandmark Dep. Tr. at 33.)[7]

---

[6] Scott Ronken testified that Weyerhaeuser would often load trailers in such a way that there would be no room for security devices. (Ronken Dep. Tr. at 18-19.) This defect, however, would be open and obvious. Therefore, under the <u>Savage</u> rule, it would be the carrier's responsibility to remedy this unsafe loading. <u>Savage</u>, 209 F.2d at 445.

[7] During oral argument, counsel for Vargo-Shaper asserted that viewing the loaded trailer from the ground at the Weyerhaeuser facility would make it difficult to observe loading defects located at the top of the load. However, "[a]n inadequate inspection does not force liability onto the shippers." <u>Decker v. New England Pub. Warehouse, Inc.</u>, 749 A.2d 762, 768 (Del. 2000) (citing <u>Savage</u>, 209 F.2d at 445). The carrier has the obligation to properly inspect the load, and cannot perform a simple "cursory review." <u>Id.</u> In this case, the Fil-Mor spotter and Schaper should have attempted to obtain a better view of the load to ensure the absence of loading defects if such defects could not be seen from the ground.

Accordingly, Vargo-Schaper has not met her burden in establishing a latent loading defect.

In contrast, there is evidence in the record indicating that the heaviest bundles in Schaper's load were placed next to the trailer doors. (See Dolfay Dep. Tr. at 35.) However, Vargo-Schaper has provided no evidence indicating that heavy bundles are less stable than lighter bundles.[8] Without such evidence, the Court will not speculate as to the dangerous nature of placing heavy bundles next to a truck's trailer doors. See Bob Useldinger & Sons, Inc. v. Hangsleben, 505 N.W.2d 323, 328 (Minn. 1993) (holding that "speculation, without some concrete evidence, is not enough to avoid summary judgment."). Indeed, even Vargo-Schaper's expert, Terry E. Morgan, does not opine that placing heavy bundles next to trailer doors constitutes a loading defect. (Morgan Aff. Ex. A.) Accordingly, there is no evidence of a latent loading defect in this case.[9]

---

[8] Vargo-Schaper does not argue that Schaper would not have been so severely injured if struck by a lighter bundle in his trailer.

[9] Morgan, Vargo-Schaper's expert, has opined that Weyerhaeuser was negligent in the loading of Schaper's trailer, but Vargo-Schaper does not claim that this negligence constitutes a latent loading defect. (Mem. in Opp'n at 12.) Morgan contends that several devices can be used to prevent a bundle from falling off a trailer, but he does not describe the presence or absence of these devices as being difficult to observe. (Morgan Aff. Ex. A.) While Morgan states that the lack of such devices within the length of the trailer would be concealed by loaded cargo, he does not state that the presence or absence of devices used to secure the bundles loaded next to the trailer doors would be concealed. (Id.) Moreover, the record indicates that Weyerhaeuser did not normally use securement devices when loading bundles, and therefore, the fact that they were not utilized for the load in question was not concealed from Schaper, who transported Weyerhaeuser loads on a regular basis. (Strandmark Dep. Tr. at 19, 41; Dolfay Dep. Tr. at 11-12, 44, 48-49; Thompson Dep. Tr. at 19.) Indeed, "[w]hether a defect is discernable from ordinary observation may depend on the experience of the carrier." Smith, 2004 WL 326696, at *3.

Vargo-Schaper argues that even if she cannot prove the traditional elements of negligence, summary judgment is not appropriate because she can establish an inference of negligence through the doctrine of *res ipsa loquitur*. (Mem. in Opp'n at 14-15.) *Res ipsa loquitur* is a "way of characterizing the minimal kind of circumstantial evidence which is legally sufficient to warrant an inference of negligence." Olson v. St. Joseph's Hosp., 281 N.W.2d 704, 708 (Minn. 1979). In order to submit a negligence claim to a jury on the basis of *res ipsa loquitur*, a plaintiff must establish three elements: "(1) The event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." Stelter v. Chiquita Processed Foods, L.L.C., 658 N.W.2d 242, 247 (Minn. Ct. App. 2003).

A plaintiff must establish "sufficient evidence" of the above-referenced elements to receive a *res ipsa loquitur* instruction. Id. In this case, however, Vargo-Schaper has put forth no evidence establishing Weyerhaeuser's exclusive control over Schaper's load. In fact, both a Fil-Mor spotter and Schaper exerted control over the load prior to Schaper's accident. Moreover, Vargo-Schaper has put forth no evidence that Schaper himself did not contribute to his injuries through the driving of his truck.

"Negligence cannot be shown by the mere fact that an unfortunate accident occurred." Sperr v. Ramsey County, 429 N.W.2d 315, 318 (Minn. Ct. App. 1988). Accordingly, because Vargo-Schaper has not put forth evidence of a latent loading defect in Schaper's load, and because she cannot successfully invoke the doctrine of *res ipsa*

*loquitur*, negligence cannot be established. Accordingly, the Court will grant summary judgment.

## CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS ORDERED** that Weyerhaeuser's Motion for Summary Judgment (Doc. No. 29) is **GRANTED** and Vargo-Schaper's Complaint (Attached as Ex. A, Doc. No. 1) is **DISMISSED WITH PREJUDICE**. Accordingly, Weyerhaeuser's Third-Party Complaint (Doc. No. 19) is **MOOT** and is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: August 5, 2009

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge